3090524 consolidated with 3090525 and 3090526. People of the State of Illinois Appellant by Richard Leonard v. Andrew R. Smith and City of Peoria Appellees by Kimberly King and Robert Pujas. Thank you. Mr. Leonard, you may proceed. Thank you. May it please the Court, Counsel, I ask for oral argument today to make it clear what I'm asking from this Court. All I'm asking is that this Court remand the cause for a meaningful hearing on the merits of whether the defendant's statements are admissible at trial, the statements that they made during this police investigation. At the trial level, the people subpoenaed those statements from the officers accused of the crimes and also three other officers. The City of Peoria defendants filed a motion to quash that subpoena. There was a hearing, there was argument, the only evidence that was presented were from the defendants. They were documents entitled Guarantee Warnings signed by each of the three defendants. The trial judge ordered that the city and defendants turn over those statements for the trial judge to review those in camera. The trial judge did that along with the Guarantee Warnings statements and he quashed the subpoena in his order. He stated that these statements were inadmissible under guarantee. However, there was no meaningful hearing on the merits of whether these statements were admissible at trial. The only issue before the trial judge was whether the subpoena should be suppressed. That leads me to the first issue the defendants raised is this court's jurisdiction. By the trial judge suppressing, by the trial judge quashing that subpoena, he not only quashed the subpoena, but he suppressed evidence which the state was seeking to use at trial. Now the seminal case in this issue is Geardy vs New Jersey by the US Supreme Court. In that case the defendants were police officers accused of fixing traffic tickets. There was a statute in New Jersey which stated that any person who does not comply or cooperate with an investigation will be terminated. Those officers were to choose between giving a statement or asserting their Fifth Amendment rights remained silent. They chose to give a statement under the overt threat of their job forfeiture. The Supreme Court held that those statements were coerced because they had to choose between incriminating themselves or their job. Now since Geardy there were two other subsequent decisions which expanded and further explained Geardy. I cite the case of US vs Frederick which is a District of Columbia federal case. In that case the court looked at all three of the US Supreme Court decisions and they came up with a simple test to determine whether a statement in this situation is coerced. The test that they came up with is in order for the statements to be considered compelled under threat of discharge, the first prong is the person must subjectively believe that he will lose his job if he asserts his Fifth Amendment privilege. I'd like to point out here on page 12 of my brief, the first prong it states a person must objectively believe it should be subjectively believed. I apologize for that. But the second prong after you get past this prong is whether that belief was objectively reasonable under the circumstances. Now in our case it is impossible to determine from the evidence presented to the trial judge whether these statements were compelled. All we have are these written Geardy warnings signed by the defendants and the defendants statements which the people have never seen. It was just done in camera by the trial judge. The statements, written statements that the written documents entitled Geardy warnings which were presented had language, I quote, I submit this report, open parenthesis, give statement, close parenthesis, his order as a condition of employment in view of possible job forfeiture. I have no alternative but to abide by this order, end quote. Now the case law seems to say that the ordinary job pressures and the possibility of job loss is not enough. That's why U.S. versus Frederick came up with this two prong test. I'm asking that this court adapt the Frederick test because it's well reasoned. It encompasses three U.S. Supreme Court decisions and it's been accepted by many other federal and state courts. But it has not been in Illinois, has it? That was also a federal case. In that case, a state trooper was charged with failure to reduce speed to avoid an accident and also for failure to use due care to avoid an accident where he struck a bicyclist while on duty. He was ordered by his superiors to give a statement to account for his actions. In that case, the trial judge held that the statement was admissible because there was no overt threat of job forfeiture, only the possibility of job forfeiture. But Bynum is favorable to the people in this case. The trial judge simply decided to ignore that case. But there is no real case law other than Bynum. I think for the guidance of trial court judges and attorneys, the Frederick test would be very helpful in this court if this court was to choose to adapt that test to give us guidance throughout the state of Illinois. Now in the instant case... Well, don't we have really a problem starting back with Garrity when they're talking about overt and that we've injected trying to figure out what overt really means? It is open to interpretation. That would be the trial judge's decision whether it was an overt threat. I believe you can't just take the Garrity warnings and the statements by the defendant without testimony of what actually occurred to decide whether there was an overt threat. You can't look at the Garrity warnings in a vacuum. There must be some testimony of what was said to the officers. And if they believe, subjectively believe that they were being fired, then it would be up to the trial judge to determine, using this test, whether that was objectively reasonable under the circumstances. Again, the possibility of job forfeiture is not enough to kick in the Garrity warning and suppress the evidence. Why do you say that? Why does everybody say that? Well, that's what the cases say. I'm asking why they say that. Does that really necessarily follow an overt threat? Does a threat have to be... I mean, if you're operating, you're asking for a hearing to determine whether that overt threat, not whether it was possible, but was there an overt threat, correct? Yes. In Garrity, there was an overt threat. The officers were ordered to give a statement or forfeit their jobs. They were threatened with forfeiture of their jobs, correct? They were threatened with forfeiture of their jobs. So we're not talking about whether it was possible they would lose their job, or probable they would lose their job necessarily. It was the threat itself that led to the coercion, correct? Yes. And in People v. Bynum, the Illinois case, they held that an overt threat was necessary. That's the state of the law in Illinois. That's the only published case. But Bynum was decided under Indorado before Frederick was decided, right? Yes, it was. So they didn't have the benefit of Frederick when they were making their decision. They did not. And you're asking us to adopt Frederick. Yes, I am. I believe that it's well-reasoned. It's been adopted by many federal courts and state courts. And it's a simple test, a two-pronged test, and I believe that it would give great guidance to trial courts and attorneys alike in deciding when these cases come up whether there was significant threat of job loss for the statements made to an internal police investigation to make those statements coerced and inadmissible. I have no idea whether these statements were coerced or inadmissible. All I'm asking for is that this court remand the case for a hearing on the merits. Does, or do, Garrity or Frederick require a hearing? I beg your pardon? I'm sorry. Do Garrity or Frederick require a hearing? In Garrity, there was no hearing, but there was the officer's statements and there was testimony concerning the circumstances around the statements. In U.S. v. Frederick, they adopted this two-pronged test and there was a hearing and there was testimony regarding the circumstances around the statements that the defendants gave. So I guess the answer to your question is whether these statements are admissible or whether they're coerced, there would have to be a hearing for the trial judge to determine whether these statements would be admissible at trial. But the statements here were written statements, right? I mean, what's the... There were... What would the hearing produce other than written statements? They were pretty clear. Well, the people have never seen the written statements by the police officers. The only evidence presented at this hearing is the motion to quash... I'm sorry, I meant the written warnings. The Garrity warnings, yes, but the documents specifically state possibility of job forfeiture, but the case law indicates that the possibility is not enough. But where is that case law, the possibility is not enough? Is it just that Fourth District case? It's in Frederick and in the Fourth District case also, but the Fourth District case was decided before Frederick's. It's in Frederick's and also... Well, that's what I'm saying. I think the Fourth District created this concept of possibility, didn't they? They did not. They said there must be an overt threat. They adopted Indorado, which also said there must be an overt threat of possible loss of job. Frederick's seems to indicate that not only there has to be an overt threat of job loss, but there can be an implied threat of job loss, which is significant where these statements are coerced. Mr. Leonard, you're asking us to focus on just a single word, possible, in those Garrity warnings, where the substance of the Garrity warnings is we were told that we had to answer these questions. Yes, but just taking those Garrity warnings in a vacuum without any testimony concerning what was said to the officers and the fact that the trial judge was the only person to see the statements, I don't believe that there's enough evidence there to determine whether these statements were coerced or compelled. It says possibility of job loss in the Garrity warnings, but Bynum says the possibility are ordinary pressures, job pressures such as discipline. That is not enough to kick in the Garrity warning and protection against using those statements at trial. I have one more question for Mr. Leonard. So you're basically saying that in order for that determination, two-pronged determination under Frederick to be satisfied, you have to see the underlying statements? It would be helpful to see the underlying statements. What's that going to tell you? First, it would tell you what the statements were, but more importantly, I believe, is testimony concerning what was said before these officers signed these Garrity warning documents. So you could find that out without ever seeing the underlying statements, right? Yes, yes. But you're still asking us to do some sort of an order that allows the state to see the underlying statements as part of the evidentiary hearing? That would be the most optimal decision, I believe, because in each case that I cited, those statements were made available, and there was also testimony concerning what was said regarding the statements. I believe that you should not consider just the Garrity warnings in a vacuum. I believe that that would not be a meaningful hearing on the merits, and I'm asking that this court demand the cause for such a hearing and adopt the Frederick test. Can I ask one more question? Follow-up, yes, please. Could you not find out what you want to know simply by talking to Officer Boland? That would be one situation. I believe that would be true. I believe it's more important to talk to Officer Boland and have him testify than have the statements of the officers produced. But for a meaningful hearing, the statement should also be produced. Maybe the statements are not incriminating. We just don't know at this point, and I'm asking for a hearing for the trial judge to make that determination based on all of the evidence. It seems to me that the whole point is that you don't get to see the statements if they were coerced. No, that's not true. Garrity held that the statements are inadmissible and did not hold that the prosecution could not see the statements. Thank you, Mr. Leonard. I believe, Ms. King, you are proceeding first. Yes, sir. Okay, you may proceed. Your Honor, Kimberly King, appearing on behalf of the city of Peoria in this matter. The statements sought by the state in the internal affairs investigation in this case were absolutely compelled statements. The statements provided by Peoria police officers Andrew Smith, Gerald Sulter, and Jeremy Layman were provided pursuant to the Garrity warnings. The Garrity statements or warnings are identified that way within the police department. They're identified that way on the document that was signed and read and agreed to by each of the defendants in this matter. They were compelled because these officers were told by a superior officer that they had to give these statements. They were compelled because they were being given as a condition of employment. And they were compelled because the officers had no choice but to abide by the order in view of a possible job forfeiture. Additionally, it was made clear to each of these officers that the statements being given would be used solely and exclusively within the police department for disciplinary issues only, that these statements would not be used against the officer in any subsequent proceeding outside the department. That's clearly articulated in the warning that each of these officers read and signed. And even having said all that, the officers then put the department on notice by signing the Garrity document that they did not intend to waive their Fifth and 14th Amendment rights against self-incrimination. And by invoking those rights, each of these officers specifically relied upon the doctrine set forth in Garrity versus New Jersey. This is a Supreme Court case that clearly recognizes the privilege against self-incrimination is not to be watered down because of the classification of person invoking it. Just because it's a police officer does not mean that he or she should have a lesser right under the Constitution than would another citizen. And by signing these Garrity warnings, by being provided these Garrity warnings, these officers very clearly believed themselves, I think both subjectively and objectively, to be under a direct order to do so in threat of losing their jobs if they failed to provide an answer to the questions posed to them by the internal affairs investigator. The lower court at the trial level recognized very clearly that these officers had relied on Garrity and had the reasonable right to rely on Garrity. In doing so, in signing these statements and making the statement, they were reasonable in their belief in Garrity as pointed out by the state in the Frederick case. The Supreme Court in Garrity recognized that the choice to testify against oneself or lose one's job was really no choice at all. And the lower court recognized exactly the same thing in determining that it was not appropriate for the state to have a look at the statements to determine whether or not they could go forward with a criminal case. That's exactly what the Garrity case stands for. Justice McDavid clearly pointed out to the state that that's the crux of the whole case. If we're supposed to let you look at the statements, then we've already gone astray from what Garrity clearly provides and what the Garrity warnings clearly provided these officers. And that these officers clearly relied on in making a statement in an internal affairs investigation in the first place. I think the other thing that is very relevant, certainly from the city of Peoria's perspective, is that there's a very strong public policy argument to be made against providing these kinds of statements to the state's attorney's office when they're made by a police officer or police officers in the context of an internal affairs investigation. Clearly, one of the charges of a police department or any law enforcement agency, frankly, is to be able to do a thorough and complete investigation of any allegation of misconduct or wrongdoing by its officers when on duty. And in order to be able to do such an investigation and maintain the public's trust that the department has the ability to do such an investigation, the officers have to have, have to have your honors. Some very specific incentive to give such a statement that could be incriminating in some way. And that incentive is the Garrity warnings that have been provided to each of those officers and provided to this court for review. Aren't we really talking about now, because the state is saying, no, the real crucial issue is admissibility here. Okay. I mean, we don't want coerced statements being admitted in violation of the 5th, 14th Amendment. But what you're saying is, no, you can't look at the statements if the officers believe that they were under a threat, overt threat of losing their job if they did not provide this statement, correct? That really you are saying the public policy is the confidentiality of those statements in furtherance of an internal investigation is what you're trying to protect, right? I think that's one of our arguments, Your Honor. I certainly don't think that's the only, the other thing that we're arguing very clearly is that, in fact, these statements are coerced and they're coerced for each of the reasons outlined. They may be coerced, but if they can't be used in any criminal prosecution, they're not admitted. So what? Or is it just the confidentiality? I think that it is, the confidentiality issue is certainly one relied upon by the officers, one that I think the case law even cited by the prosecutor's office understands that they're not admissible and they're not admissible for a particular reason. I think that reason is not only the coerced nature of those statements, but the confidentiality that goes along with that. Clearly, these officers relied upon in signing these Garrity warnings. Ms. King? Yes, Your Honor. In Garrity, the Supreme Court used Miranda warnings as the analogy for these Garrity protections. Yes, Your Honor. As Miranda has been watered down fairly consistently over the years, what's the argument that Garrity should still have the same level of protection? I think the argument, Your Honor, one of the arguments at least, is that the case law, even having evolved since Garrity, continues to rely on Garrity as the hallmark, as the staple. One of the cases cited by the city of Peoria, for example, the Aiken case, was decided by the Georgia Supreme Court in 2008, a very recent case, that clearly relies on Garrity and relies on its totality of the circumstances test to determine when and if a statement is actually coerced and when and if an officer has the ability to rely on that statement. But unlike the Frederick case cited by the prosecutor's office, that's not all that's supposed to be looked at. And some of those other considerations are the very considerations, Your Honor, that appear in the Garrity warning that is provided to each of the officers. So I understand that Miranda has been watered down somewhat, but that has not been the experience as it relates to Garrity, and its evolution has remained, I think, strong in terms of Garrity continuing to be the hallmark, certainly in law enforcement activity. Counsel, your chance. The city's position is that these statements that are read, acknowledged, signed by the officers are sufficient to allow an inference of coercion over threats. We don't need any further inquiry as to the state of mind or understanding of the officer of what that language means and what it meant for him or her. We certainly believe, Your Honor, at the trial level, the judge's ability to review these Garrity warnings absolutely provided the full and fair opportunity for that court to review these statements to understand what these statements meant to the officers at the time of signature, yes. Ms. King, if we were to amend this matter and order an evidentiary hearing, but limit it to the circumstances surrounding the giving of the statements and exclude the statements from consideration, does the city have a problem with that? We would have a problem with that, Your Honor, to the extent that we've already been through that exercise, that that's exactly what happened at the lower court level, and that the trial judge had the opportunity to review the Garrity warnings and was satisfied with that review in making his determination. Did Judge Brandt have an opportunity – well, two questions. Yes, very quickly. Was there anything provided by Officer Boland or anyone else in the police department that disputed the Garrity warning statements? No, there was not. Did Judge Brandt have an opportunity to, and did he talk to Officer Boland? He did not. Okay, so the objective reasonableness of their belief has not actually been tested. We believe it's been tested in the lower court's review of the warning itself, the ability to read and review each of these warnings and to see that each of the signatures attached to those warnings belonged to the officers who were subject to these warnings. Thank you. I believe Mr. Kuzos? Yes, Your Honor. You may proceed. If it may please the Court. Your Honor, I believe that the State is making two arguments before this Court, and that is that the defendant's statements are discoverable regardless of their admissibility, and two, that the case should be remanded for hearing to determine whether the statements are admissible, i.e., specifically, whether admitting the statements would violate the Garrity rule. On both issues, I believe the State is wrong. The trial court's denial of the State's discovery request is really not reviewable, Your Honor. The State maintains that the trial court was wrong in denying its discovery request that the defendant's statements be turned over to the State. The State filed an interlocutory appeal under Supreme Court Rule 604A1, seeking to have the trial court's ruling reversed. But it is not every pretrial ruling denying discovery requests that is reviewable under 604A1. The appellate court has jurisdiction to rule under 604 to review an order denying the discovery request only if the order has the substantive effect of suppressing the evidence. In this particular case, Judge, this is not evidence. It's not allowed in evidence. It's inadmissible in itself, and it's very nature that it's coercive, that the officers were told that if they do not answer these statements, that that is minimally a form of insubordination. But, in fact, in the Garrity statement itself, it states, if I may, I submit this report at the order of Sergeant Bowen as a condition of my employment. In view of possible job forfeiture, I have no alternative but to abide by this order. Your Honor, that in itself is telling you that this is coercive in nature and that the officer did not have a choice, but due to his employment and the fact that he may or will be terminated by not obeying that direct order, gave a statement. Now what the State is asking you to do is they're saying, okay, Judge, we have the opportunity to talk to Sergeant Bowen. We have the opportunity to talk to the alleged victim, which is a story unto itself that I don't believe is pertinent for the purposes of this argument. However, they have all the tools in the world to investigate what happened, what occurred, what the officers did or didn't do. But by taking a coercive statement and saying we're going to use that as an investigative tool, that's the whole purpose of Garrity. You cannot force someone to give a statement against self-interest and then turn around and order them to give it to you because if you don't give us this statement, we're going to fire you. Now we're going to turn around and use that as an investigative tool. The State is trying to have both sides of the pie and not want to share it with anyone. Your Honor, I don't believe that these statements come in. They don't belong in. And as we cite, it puts the officer, it puts the courts between a rock and a whirlpool. It's not where we belong, Judge, and that is not the state of the law. Mr. Kouzis, do you agree with Frederick? Judge, the difference with Frederick is that I agree in the sense that the statement was suppressed and was not allowed in. What happened in Frederick that I believe is different than the case at Bar here is Frederick was interviewed twice prior to, and he was given what the FBI referred to as Form 645, which would be the equivalent of the Garrity warrant. Then a couple months later, the agent come back in and questioned him without giving him the Form 645. And then it was at that point that the Department of Justice tried to use those statements that were given in, I believe it was in January, several months after the last interview with the agent. It was at that point in time that they used those statements that he gave without the benefit of the Form 645 or the Garrity warnings being given to him at that point in time and saying that these were voluntary statements that he made, therefore were admissible. And the court, of course, said they were not admissible. We don't have that in this situation. Go ahead, Your Honor. Okay. I asked my question badly, I think. Do you agree with the two-prong test that set out in Frederick? No, I do not. Okay. Okay. I forgot what my other question was. I'll come back to it. Do you think that a hearing was required by Frederick? Pardon me? Do you think a hearing was required by Frederick or Garrity? The reason that the hearing by Frederick— There were hearings, but were they required? Well, the reason the hearing became a requirement was because of the fact that the Justice Department was trying to use the statements of January or the third interview where the Garrity warnings were not given again, even though the FBI agent the court found was aware of the Garrity warnings, was aware of the policies and procedures of the FBI and how they carry out their internal investigations, and then was brought back in for continued questioning, but because the Garrity warnings weren't given again, they said, well, there were no Garrity warnings. At this point in time, you gave that statement freely and voluntarily. That is not the case that we have here. The purpose of the hearing, that second, was to deal with that second interrogation, basically. Or the third. The third, yes, but yes, that's the purpose of it. Okay. But your view is that as long as the Garrity warnings were present at the time these statements were made, that that is enough for the court, without a hearing, to determine whether, under the Aiken analysis, the totality of the circumstances would establish that this would have been a statement given in a coercive environment, correct? That is correct. Okay. So a hearing may be necessary. It's not required. Is that what you're saying? No. Not under given circumstances. I believe that. I believe you're saying that in this case. No, I believe, as long as we're talking about Frederick's, I believe what's happening, what happened in Frederick's was the government trying to do an end run around Garrity protections that the FBI agent was, that he, in fact, was able to cloak himself under. By waiting several months to continue the investigation, bringing the FBI agent back in under the guidance that this was a continuing internal investigation, questioning him for four days, the agent believing he was still under his Garrity warnings, and the government saying, no, you gave a voluntary statement, so now we want to let it in. That was the purpose of the hearing, for the judge to determine what the officer believed, what had happened, what were the circumstances surrounding the statement, how it was given, where it was given, who was present for it, and the court found that it wasn't admissible. On that basis, Judge, and I don't believe that Frederick really has a lot to do with this case. I know the state is relying upon it, but I do not believe that it really fits into our case. As a matter of fact, Your Honor, I believe that Brockdorf from the Supreme Court of Wisconsin would actually give a more clear and concise view as to what happened, because that's where we have the Milwaukee police officers that find themselves in a similar situation that we find ourselves here. The state is trying to take the statements of these officers and use that in their investigation. Well, the first problem that has to be hurdled is that the state's not even entitled to look at these documents. The Garrity statement in itself says that this will not be used in any criminal procedure. This will only be used within the internal workings of the police department for the purposes of determining discipline of the officer. This is not something that is going to be used at a later time because we decided that we want to prosecute you because you were writing phony parking tickets. You were doing something. You were ranking phony DUI arrests. If the officer comes in during his Garrity and gives an honest, thorough statement, he has the protection of Garrity because it's a coercive statement, and it is not something that the state is entitled to view. It is not something that the state can use as an investigative tool. It is not something that the state can use to go out and do an investigation in ancillary matters. However, as the state does point out, to your honors, the state has the opportunity to talk to Sergeant Bowen. They can ask him, what occurred? What do you feel? What should we investigate? Should we go down this path? Should we go down that path? That's fine. The officer's statement itself is not admissible and should not be used as an investigative tool. And on that basis, your honors, I would ask that clearly you uphold the ruling of the circuit court. I believe that the making of the threat of job loss at the price of exercising an officer's Fifth Amendment right, compelled with the assurance that the statement could not be used in a criminal prosecution, makes the officer's subjective belief that he would be fired objectively reasonable. And that's what we have here, your honor. And I would ask you to rule and affirm the trial court's decision in this matter. Thank you. Mr. Kuzas, the importance of Frederick, the significance of Frederick is that if we decide that Frederick is the applicable case, then we need to look at whether both prongs were satisfied. And it's clear that the Garrity warning statement that's before us here satisfies the first prong. What is not so clear is whether it satisfies the second prong. And that's what we're called on to decide if we decide that Frederick is the applicable case. And so that's the importance of it. And that's what we have to look at because that's what we have to review. Well, Judge, you had the subjective objective test of Frederick. The test became not whether the job loss was automatic, but rather whether the employee subjectively believed that he would be fired if he exercised his Fifth Amendment right and whether that belief was objectively reasonable. I believe that we all agree that that would be true at this point in time. When we look at the Supreme Court of Wisconsin's case, which is most adoptively adopted under Brockdorf, and the Colorado Supreme Court, which earlier adopted the Frederick's test, under and sat, it is clear that we have shown the threat of job loss need not be automatic. The threat of job loss at the price of exercising one's Fifth Amendment right triggers guaranteed use immunity as long as job loss is among the penalties that have been stated as a consequence of the refusal to make a statement. Frederick, Snapp, and Brockdorf, the state's insistence that threatened job loss must be automatic before guaranteed use immunity is triggered is simply wrong. Courts have recognized that the state employee may honestly believe that their failure to follow in order to answer the question may result in their dismissal. That belief will satisfy, it appears, the subjective prong of the Frederick test in all the conceivable cases. But whether the subjective belief is objectively reasonable is another matter. The state is therefore correct in saying that not all coercive situations trigger guaranteed use immunity. Thus, the courts recognize that an employee may sense a form of coercion, his fear alone that failure to cooperate may result in his termination, but his fear is insufficient unless the state has done something that will justify his fear. In other words, the coercion commented in and guaranteed must be a function of the same state action and not merely the fear of the employee as himself. And, Judge, that's what we have here. The state has played the part of justifying the employee's fear. In other words, the employee's fear that he could receive some form of discipline, perhaps termination, if he refuses to follow in order is insufficient to trigger the guaranteed use immunity. It's only where, in our case, the employee is directly threatened with the possibility of job forfeiture and the consequence of exercising a stiff amendment. And they did that, Judge, by warning them of the guaranteed warnings and telling them that they could possibly lose their job. So, no, Judge, I don't believe that the second prong exists in this case, and I don't believe it should be considered. Thank you, Mr. Pouzas. Mr. Leonard, you may reply. Yes, I'll start with Justice McDade's question. I think she would have succinctly stated my argument better than I have. The question here, I will submit that- I think that's a first, Mr. Leonard. Well, it is clear these officers probably subjectively believe that they would be fired. However, what is not clear in this case, and there's not enough evidence to support that this was objectively reasonable under the circumstances, we simply don't have enough evidence. We need, probably, Officer Bolings to testify to put some context around these guaranteed warnings. And let me be clear that people are seeking these statements by the police officers to be admitted at court, at trial. So there must be a hearing for the trial judge to determine whether they are admissible. Guaranteed, the defendants read too broadly. Guaranteed simply states that if the statements were coerced under threat of job loss, then they're inadmissible at trial. It doesn't mean that the city of Peoria is the gatekeeper and they determine what statements are protected by guarantee and whether they should be released to the people. It would be the trial judge's decision. In this case, it was simply the trial judge quashing the subpoena. There has never been a determination, a meaningful hearing, on the merits to determine whether these statements were, in fact, coerced. Mr. Leonard, I don't speak for anybody but me here. I don't think you get the statements until after there's a determination of the second prong, if the second prong is appropriate. I don't see what the statements give you. All you are entitled to under Frederick is the context in which those guarantee warnings were developed and executed. I don't think you get the statements as a part of that process. Well, I would respectfully disagree because the statements are an issue here. The statements, if we don't know the context of the statements, perhaps there is no value to the prosecution for these statements. I believe to have a fair and meaningful hearing, we not only need the statements, but we need some testimony regarding the context of what these officers were told when and before they signed these guarantee warnings. With respect to Justice Linton's question, whether a hearing is mandated under Frederick, I guess the answer would be no. I cited Frederick for the proposition of the two-prong test, which summarized the U.S. Supreme Court law. However, a hearing is mandated in this situation because the people are seeking those statements and they want to use those statements at trial against these officers. At some point, the trial judge has to decide whether they were coerced and whether they are admissible. We just don't have enough facts at this juncture to determine whether those were objectively reasonable and coerced under the circumstances. So all I'm asking for is that this Court remand for a fair and meaningful hearing on whether these statements are admissible. I ask that you adopt the Frederick test because I believe it's a simple test. You get the trial court's attorney's guidance at the trial court level, considering that the only other published case on this issue was the Bynum case, which was decided back in 1987, which did not consider all of the case law that has been developed since 1987. The Aiken case out of Georgia is a totality of the circumstances test. They relied solely on parity, but the problem with that is they don't rely on the subsequent Supreme Court cases. I believe that People v. Frederick encompasses all of the cases by the Supreme Court, and it's the better reason test and should be considered. If you don't have any other questions, I ask that you reverse the trial judge's order and remand for such a hearing. I don't believe there are any further questions. Thank you, counsel, for your arguments in this matter this morning. It will be taken under advisement.